**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **ADRIENNE GROSS TOWNES,** | * |
| | * |
| Plaintiff | |
| | * |
| v. | CIVIL NO. JKB-15-1093 |
| | * |
| **MARYLAND DEPARTMENT OF JUVENILE SERVICES,** | * |
| | |
| Defendant | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Adrienne Gross Townes ("Plaintiff") brought this action against the Maryland Department of Juvenile Services ("Defendant"), alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601 *et seq.* Now pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 13), filed on June 8, 2015. The issues have been briefed (ECF Nos. 13, 17 & 18), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Defendant's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

*I. Background[1]*

Plaintiff was employed by Defendant in various capacities from May 1995 through September 2013. (ECF No. 2 ¶¶ 5, 69.) In 2001, Plaintiff joined Defendant's "Spotlight on Schools" program; in this position she counseled youths and their families at school facilities and

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

other locations. (*Id.* ¶ 8.) By 2005, Plaintiff held the title of Case Management Specialist III ("CMS III"). (*Id.* ¶ 10.)

In 2008, Plaintiff was diagnosed with Bipolar II disorder. (*Id.* ¶ 11.) She continued to work while undergoing psychiatric treatments. (*Id.* ¶ 12.) However, in fall of 2011, Plaintiff developed Vitamin D and iron deficiencies: her symptoms were sufficiently severe that she was unable to work for a period of time, and she took a leave of absence ("First Absence"). (*Id.* ¶¶ 16-21.) Although Plaintiff notified Defendant about her condition and supplied appropriate medical documentation, neither Defendant nor its agents informed her of her rights under the FMLA. (*Id.* ¶¶ 18, 22-25.)

Plaintiff returned to work on February 27, 2012. (*Id.* ¶ 27.) Shortly thereafter, she was assigned to work on a case concerning one "N.H.," a minor. (*Id.* ¶ 28.) After learning that N.H. had stopped attending his high school, Plaintiff alerted her supervisor; it was standard protocol for Defendant to reassign such cases to community workers. (*Id.* ¶¶ 28-29.)

On May 17, 2012, Plaintiff took a second leave of absence to undergo a surgery ("Second Absence"). (*Id.* ¶ 30.) When Plaintiff returned to work in June, Defendant allegedly took a series of retaliatory actions against her. Defendant accused Plaintiff of maintaining insufficient contacts with N.H.; it moved her office to Annapolis without allowing her to retrieve her belongings; it conducted a "mitigating conference," a predisciplinary procedure;[2] and it issued Plaintiff an unsatisfactory performance evaluation, the first she had received while working for Defendant. (*Id.* ¶¶ 31-36.) Thereafter, Defendant issued Plaintiff a written reprimand;[3] as a consequence, she was no longer entitled to access sick leave from the leave bank, and she could not apply to other positions within the Department. (*Id.* ¶¶ 39-41.)

---

[2] *See* Md. Code Ann., State Pers. & Pens. § 11-106(a) (providing that an appointing authority should, inter alia, "consider any mitigating circumstances" before imposing disciplinary action for employee misconduct).
[3] A written reprimand is a formal disciplinary action. Md. Code Ann., State Pers. & Pens. § 11-104(1).

In July 2012, Defendant reassigned Plaintiff to the After Care Unit; in this position Plaintiff was required to visit youths at facilities statewide. (*Id.* ¶¶ 42-43.) Tensions continued: Defendant held two mitigating conferences in the following months (*id.* ¶¶ 48, 55), and it issued several counseling memoranda alerting Plaintiff to performance deficiencies (*id.* ¶¶ 55-57).[4] During this period, Plaintiff's caseload increased substantially; at one point, after learning of a projected sharp increase, Plaintiff suffered a panic attack. (*Id.* ¶¶ 51-52.)

On or about March 22, 2013, Plaintiff took a third leave of absence ("Third Absence"). On April 2, 2013, Plaintiff's psychiatrist, Dr. Donn Teubner-Rhodes, contacted Defendant's Director of Human Resources, Philip Deitchman: Teubner-Rhodes informed Deitchman that (1) he had diagnosed Plaintiff with an adjustment disorder, (2) the adjustment disorder had exacerbated Plaintiff's underlying Bipolar II, and (3) Plaintiff was consequently "medically disabled from work." (ECF No. 17–3 at 2.) On July 1, 2013, Teubner-Rhodes advised Deitchman that Plaintiff could return to work if Defendant made certain accommodations: specifically, he recommended that Plaintiff should be "moved from her current work assignment" and placed at a "school or intake so that she won't be traveling from place to place"; that she should work day shifts only; and that her commute should be under thirty minutes. (ECF No. 13–4 at 4.) Plaintiff alleges that positions within Defendant's intake department and Spotlight on Schools program met these criteria. (ECF No. 2 ¶ 62.)

Rather than acting on Teubner-Rhodes's recommendation, Defendant sent Plaintiff to the State Medical Director ("SMD"), who in turn referred her for a psychological evaluation. (*Id.* ¶ 64.) Although the psychologist suggested that Plaintiff's medication should be adjusted and stabilized before any final decisions were made regarding her request for accommodations, the

---

[4] "[A] counseling memorandum is an instructional communication and is not a disciplinary action . . . ." Md. Code Ann., State Pers. & Pens. § 11-107(a)(1).

SMD concluded that Plaintiff could not perform her essential duties with or without accommodations. (*Id.* ¶¶ 65, 67.) Thus, Deitchman denied Plaintiff's request;[5] she was placed on leave without pay status on October 1, 2013, and she was removed from Defendant's payroll in March 2014. (*Id.* ¶¶ 68-69.)

Plaintiff filed suit in the Circuit Court for Baltimore City on September 23, 2014, alleging violations of the FMLA and the MFEPA. Defendant removed the action to this Court on April 16, 2015 (ECF No. 1), and it subsequently filed the pending Motion to Dismiss (ECF No. 13). Plaintiff submitted a Response in Opposition on July 10, 2015 (ECF No. 17), and Defendant replied on July 24, 2015 (ECF No. 18).

## II. *Standard for a Rule 12(b)(6) Motion to Dismiss*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. That said, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

---

[5] In his denial letter, Deitchman stated that Defendant had considered—and rejected—three possible accommodations: job restructuring, reassignment to a vacant position, and work from home. (ECF No. 13–7 at 2.) The letter invited Plaintiff to submit any additional proposed accommodations within ten business days. (*Id.* at 3.) The letter did not indicate whether Defendant had specifically considered placing Plaintiff in intake or in the Spotlight on Schools program, two positions that Plaintiff alleges would have satisfied her psychiatrist's criteria.

As a general rule, extrinsic evidence should not be considered at the 12(b)(6) stage. However, the Fourth Circuit has recognized that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alterations in original) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *see also Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *2 n.2 (D. Md. July 8, 2010) ("The same standard applies to documents attached to a plaintiff's response in opposition.").

In this case, Defendant attached a series of exhibits to its Memorandum of Law; Plaintiff responded with her own set of exhibits. Several of these exhibits—namely, two letters from Plaintiff's psychiatrist (ECF Nos. 17–3 & 13–4) and Defendant's denial-of-accommodation letter (ECF No. 13–7)—are expressly referenced in and integral to Plaintiff's Complaint, and the Court will consider them in ruling on Defendant's Motion. The remaining exhibits are neither integral to nor explicitly relied on in Plaintiff's Complaint, and the Court will not consider these exhibits at this stage. *See Fisher*, 2010 WL 2732334, at *3 ("If a defendant attaches non-integral documents to a motion to dismiss, the simplest course for a court to take is to disregard them.").[6]

### III. Analysis

The FMLA guarantees eligible employees up to twelve weeks of sick leave from work during any twelve-month period. *Holmes v. e.spire Commc'ns*, 135 F. Supp. 2d 657, 664 (D. Md. 2001). Under the FMLA, an eligible employee is generally entitled to be restored upon her

---

[6] While a court presented with non-integral documents at the Rule 12(b)(6) stage may, with proper notice to the parties, convert the motion to one for summary judgment, "conversion takes place at the discretion of the court." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (quoting *Aamot v. Kassel*, 1 F.3d 441, 445 (6th Cir. 1993)). The record here is too anemic to justify construing Defendant's Motion under Rule 56: as discussed below, several of the parties' contentions require significant factual development.

return to the position she occupied when her leave commenced or to an "equivalent position with equivalent benefits, pay, and other terms and conditions of employment." 29 C.F.R. § 825.214. If, however, the employee is unable to perform an "essential function" of the position due to her physical or mental condition, she has "no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c).

The FMLA provides for agency enforcement; it also creates a private cause of action under 29 U.S.C. § 2617. An employee may bring suit against her employer under either of two theories: interference per § 2615(a)(1)[7] or retaliation per § 2615(a)(2).[8] In this case, Plaintiff's allegation that Defendant failed to notify her of her FMLA rights (Count I) is properly characterized as an interference claim.[9] Her allegation that Defendant disciplined her because of her absences (Count II) is clearly a retaliation claim.

A. *FMLA—Interference (Count I)*

In her first count, Plaintiff alleges that Defendant violated the FMLA by failing to provide her with "adequate notice of her rights" under the statute. (ECF No. 2 ¶ 87.) While an employer's noncompliance with the FMLA's notice requirements can constitute actionable interference, *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 924-25 (4th Cir. 2007) (per curiam), a plaintiff-employee must plead sufficient factual content to support the elements of a

---

[7] "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).

[8] "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2); *see also Young v. N.C. Agric. & Tech. State Univ.*, 460 F. App'x 285, 287 (4th Cir. 2012) (per curiam) ("§ 2615(a)(2) is broadly interpreted as prohibiting 'retaliation' by employers based on an employee's exercise of his FMLA rights.").

[9] Plaintiff does not identify Count I as an interference claim. However, the FMLA recognizes only two classes of private claims: those arising from interference and those arising from retaliation. Plainly, failure to provide *notice* of FMLA rights is not an act of *retaliation* against one who exercises such rights. Accordingly, courts have construed allegations relating to the statute's notice requirements as interference claims. *See, e.g.*, *Reed v. Buckeye Fire Equip*, 241 F. App'x 917, 924-25 (4th Cir. 2007) (per curiam) (recognizing that failure to provide notice of FMLA rights can constitute "actionable interference"); *Kent v. Md. Transp. Auth.*, Civ. No. CCB-06-2351, 2006 WL 3931648, at *3 (D. Md. Dec. 21, 2006) (observing that a defendant-employer's "failure to adhere strictly to [notice] regulations could constitute interference with [the plaintiff's] rights under the FMLA"), *aff'd*, 232 F. App'x 290 (4th Cir. 2007) (per curiam).

prima facie interference case. Specifically, a plaintiff must show that "(1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 649 (D. Md. 2013) (quoting *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008)). It is not enough for an employee to allege that her employer has violated some technical requirement under the FMLA and its companion regulations: rather, she must show that her employer "(1) interfered with . . . her exercise of FMLA rights; and (2) *caused prejudice thereby*." *Reed*, 241 F. App'x at 924 (emphasis added).

The parties' dispute here centers on the fifth element of the prima facie case for interference, *i.e.*, whether Plaintiff was denied a benefit to which she was entitled. Defendant asserts that she was not: rather, she "received all of the FMLA leave she requested and more." (ECF No. 18 at 1.) Plaintiff admits that she used "more than 12 weeks of leave" during her First and Second Absences (ECF No. 17–1 at 9), and it is clear that her Third Absence—from March 2013 until she was placed on leave without pay in October—greatly exceeded the twelve weeks protected by the statute. Thus, it appears that Defendant's alleged failure to notify Plaintiff about her FMLA rights had no prejudicial impact on her.

Plaintiff responds with a novel theory. She explains that because Defendant may calculate FMLA time using one of several methods,[10] Plaintiff is "unsure" whether she exceeded her allotted time during her first two absences. (*Id.*) Reasoning further, Plaintiff notes that one of the elements of a *retaliation* claim (Plaintiff's Count II) is participation in a "protected activity

---

[10] Under applicable regulations, an employer may determine the twelve weeks of protected time within a twelve-month period using any one of the following methods: (1) the calendar year, (2) a fiscal year, (3) the twelve months measured forward from the employee's first use of leave, or (4) the twelve months measured backward from the date the employee uses any leave. 29 C.F.R. § 825.200(b).

7

under the FMLA." (*Id.* at 10.)  If, Plaintiff posits, it turns out that she exceeded her protected time, "Defendant will likely argue that she was not engaged in a protected activity [so as] to defeat Count II." (*Id.*)  In other words, the alleged prejudice to Plaintiff stemming from Defendant's failure to notify her about her FMLA rights is that (1) she *may* have taken excess sick leave back in 2011–12, (2) Defendant *may* eventually argue that she was therefore not engaged in a protected activity, and (3) this fact *may* undermine her retaliation claim.

Plaintiff cites no authority for the proposition that the mere possibility of a detriment to her future litigating position constitutes sufficient prejudice to support an FMLA interference claim.  On the contrary, courts have insisted on a showing of actual, concrete harm—typically either interference with the employee's ability to take leave in the first place or refusal to restore the employee to her former position at the conclusion of her leave.[11]  *Cf. Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (The FMLA "provides no relief unless the employee has been prejudiced by the violation:  The employer is liable only for compensation and benefits lost 'by reason of the violation,' . . . for other monetary losses sustained 'as a direct result of the violation,' . . . and for 'appropriate' equitable relief . . . .  The remedy is tailored to the harm suffered." (citations omitted)).

Because Plaintiff cannot point to any specific FMLA benefits that she was denied, Count I must be dismissed.[12]

### B.  FMLA—Retaliation (Count II)

---

[11] Plaintiff quotes dicta from *Holmes*, 135 F. Supp. 2d at 665 n.9, which suggests that violation of the FMLA's notice requirements *could* prejudice an employee who exceeded her leave but would have timely returned to work had she been apprised of her rights.  However, Holmes was actually terminated; Plaintiff here, by contrast, was permitted to resume her employment after her First and Second Absences, and she never returned to work after the start of her Third Absence.  Moreover, the *Holmes* court ultimately *rejected* that employee's theory of prejudice, finding that she was medically unable to return to work on the date that her leave expired and thus had "no right to be restored to her former position." *Id.* at 667.

[12] In so holding, the Court need not reach the separate question—discussed at some length in the briefs—whether Plaintiff's interference claim is time-barred.

In her second count, Plaintiff alleges that Defendant "chose to take adverse employment action against her" as a result of her use of FMLA leave. (ECF No. 2 ¶ 88.) Retaliation claims under the FMLA are analogous to those arising under Title VII and are thus analyzed according to the familiar *McDonnell Douglas* burden-shifting framework: to prevail on such a claim, the employee must "first make a prima facie showing 'that [s]he engaged in protected activity, that the employer took adverse action against h[er], and that the adverse action was causally connected to the plaintiff's protected activity.'" *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (quoting *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). "An adverse employment action is one that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Bosse v. Balt. Cnty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) (alteration in original) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). As for causation, "temporal proximity" between the protected activity and the adverse act will satisfy this prong at the pleading stage. *Yashenko*, 446 F.3d at 551.

The burden for pleading a prima facie retaliation case is not onerous, and Plaintiff appears to have carried it: FMLA leave is indisputably a "protected activity," and Plaintiff has identified at least one "adverse action" temporally linked to her exercise of leave—the formal reprimand in July 2012, through which Defendant barred Plaintiff from accessing the sick leave bank or applying to other positions within the Department.

Defendant's efforts to refute Plaintiff's prima facie case are not persuasive. Defendant argues that because Plaintiff was supposedly unable to perform the essential duties of her position after her Third Absence, she is not "entitled to any relief whatsoever under the FMLA for any potential violation." (ECF No. 13–1 at 12.) Defendant is incorrect: the July 2012 discipline could constitute unlawful retaliation regardless of subsequent developments in 2013.

*See* 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions *or disciplinary actions* . . . ." (emphasis added)).  Moreover, as discussed in Part III.C, *infra*, the Court cannot determine at this stage whether Plaintiff was or was not able to perform her essential duties.

Defendant also contends that Plaintiff's retaliation claim is time-barred to the extent that it arises from the July 2012 discipline.[13]  It is true that FMLA actions must ordinarily be brought within two years of the date of the "last event constituting the alleged violation," 29 U.S.C. § 2617(c)(1), and it is also true that Plaintiff filed suit in September 2014, more than two years after the July 2012 discipline.  But the statute creates a special three-year limitations period for "willful" violations, § 2617(c)(2), which occur when an employer "knew or showed reckless disregard regarding whether its conduct was prohibited," *Settle v. S.W. Rodgers Co.*, 182 F.3d 909, 1999 WL 486643, at *3 (4th Cir. July 12, 1999) (unpublished table decision).  At the pleading stage, courts in this District have applied the three-year statute where plaintiffs have made a "general averment as to willfulness."  *Moore v. Wash. Hosp. Ctr.*, Civ. No. DKC-11-3742, 2012 WL 2915165, at *3 (D. Md. July 16, 2012) (quoting *Honeycutt v. Balt. Cnty.*, Civ. No. JFM-06-0958, 2006 WL 1892275, at *2 (D. Md. July 7, 2006)).  Here, Plaintiff alleges that Defendant "chose" to take adverse action against her "as a result of" her use of leave.  (ECF No. 2 ¶ 88.)  While Plaintiff's retaliation count could have been drafted more precisely, it sufficiently avers willfulness to trigger the three-year statute at this preliminary stage.[14]

---

[13] Plaintiff proffers two additional examples of allegedly adverse actions:  an "unsatisfactory performance evaluation" and "constructive discharge."  (ECF No. 17–1 at 6.)  As for the negative evaluation, courts have found similar acts insufficiently "adverse" to support a retaliation claim.  *See, e.g.*, *Muldrow v. Blank*, Civ. No. PWG-13-1200, 2014 WL 938475, at *10 (D. Md. Mar. 10, 2014).  As for constructive discharge, that is a term of art, and Plaintiff has not adequately pleaded its elements—*i.e.*, that Defendant "deliberately made her working conditions '"intolerable" in an effort to induce [her] to quit,'" *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (alteration in original) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir. 1995)).

[14] In so holding, the Court offers no prediction as to whether Plaintiff will ultimately prove that Defendant's conduct was willful or, for that matter, retaliatory.

Consequently, Defendant's Motion to Dismiss Count II will be denied.

### C. *MFEPA (Count III)*

In her final count, Plaintiff alleges that Defendant violated the MFEPA, which provides that an employer may not "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee." Md. Code Ann., State Gov't § 20-606(a)(4). To establish a prima facie case for a failure-to-accommodate claim, the employee must show "(1) that . . . she was an individual with a disability; (2) that the employer had notice of . . . her disability; (3) that with reasonable accommodation . . . she could perform the essential functions of the position . . . and (4) the employer failed or refused to make such accommodations." *Adkins v. Peninsula Reg'l Med. Ctr.*, 119 A.3d 146, 160 (Md. Ct. Spec. App. 2015).

There is no question here that Plaintiff had a disability, that Defendant had ample notice of Plaintiff's disability, and that Defendant denied the accommodations proposed by Dr. Teubner-Rhodes. Rather, the parties' dispute hinges on the third prong of the prima facie case—whether, with reasonable accommodation, Plaintiff could have performed the essential functions of her CMS III position. Defendant asserts that she could not, and it supports its assertion by pointing to particular aspects of the job as enumerated in a "Position Description" that it appended to its Motion to Dismiss (ECF No. 13–3). As noted above, the Court does not consider that exhibit—which is neither integral to nor explicitly relied on in Plaintiff's Complaint—relevant to the 12(b)(6) analysis.[15] More to the point, Plaintiff alleges that there were positions (in intake and in the Spotlight on Schools program) compatible with her requested accommodations, and she bolsters that allegation in her memorandum by explaining how her previous responsibilities (before she was transferred to the After Care Unit) involved

---

[15] Whether the position description accurately reflects Plaintiff's CMS III job requirements is a question for another day, though the Court notes that the document was signed by Plaintiff's supervisor in 2013, years after Plaintiff assumed the CMS III role. It was not signed by Plaintiff.

11

substantially less of the stress-inducing travel that her psychiatrist warned against.[16]  While it remains to be seen whether Plaintiff can prove her allegations with admissible evidence, she has pleaded enough factual content to proceed to discovery.[17]

Plaintiff relatedly alleges that Defendant "chose not to engage in an interactive process" with her upon receiving her request for accommodation.  (ECF No. 2 ¶ 89.)  Defendant insists that it did engage in such a process.  The Court notes, however, that the "interactive process" the parties contemplate stems from regulations promulgated under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*  Although the MFEPA has been labeled the "Maryland State analogue to the ADA," *George v. Md. Dep't of Corr. Serv.*, Civ. No. WMN-14-2808, 2015 WL 847416, at *4 n.5 (D. Md. Feb. 25, 2015), *aff'd*, No. 15-1323, 2015 WL 5236796 (4th Cir. Sept. 9, 2015) (mem.), the Court of Special Appeals of Maryland recently clarified that Maryland regulations require "an *individualized assessment* by the employer of the employee's abilities to perform the essential functions of a job," a process according "stronger protection for the employee than the federal 'interactive process' regulation." *Adkins*, 119 A.3d at 164 (emphasis added); *see also* Md. Code Regs. 14.03.02.04(B)(3).  The court elaborated that this individualized assessment should not be "constrained to mean the job previously held by the employee"; rather, the employer must "assess the capabilities of the disabled employee to

---

[16] In its reply brief, Defendant insists that the intermittent home visits and court hearings Plaintiff was required to attend while serving in the Spotlight on Schools program are incompatible with her psychiatrist's recommendation that she refrain from "traveling from place to place."  But that "place to place" language need not be interpreted so rigidly; Dr. Teubner-Rhodes may simply have meant that Plaintiff should not be driving back and forth *across the state*, as she alleges her After Care Unit work required her to do. This is precisely the sort of fact question that cannot be resolved at the pleading stage.

[17] Defendant's citations to *Raiford v. Md. Dep't of Juvenile Servs.*, Civ. No. DKC-12-3795, 2015 WL 4485497 (D. Md. July 21, 2015) are unhelpful at this juncture.  In *Raiford*, Judge Chasanow granted summary judgment to the defendant Department on the plaintiff's Rehabilitation Act claim after finding no evidence that the plaintiff could perform the essential functions of his position or that other vacant positions were available.  *Id.* at *7-8 (emphasis omitted).  Judge Chasanow was equipped to make such determinations in light of the summary judgment record.  This Court, by contrast, is bound to consider only the Complaint and those documents integral to and explicitly relied on in the Complaint.  Plaintiff need not prove her case at this stage; it is enough that she has stated a claim and pleaded sufficient facts to raise her right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.

determine whether the employee is 'otherwise qualified' for a vacant position and what reasonable accommodation may be made, including reassignment." *Adkins*, 119 A.3d at 164. It is premature to assess at the 12(b)(6) stage whether Defendant conducted the kind of individualized assessment that Maryland law requires:  that is inherently a fact question, amenable to discovery.

Viewing Plaintiff's well-pleaded allegations in the light most favorable to her, *Ibarra*, 120 F.3d at 474, the Court cannot conclude that she has failed to state a claim under the MFEPA. Therefore, Defendant's Motion to Dismiss Count III will be denied.

## IV.  Conclusion

For the foregoing reasons, an order shall enter GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (ECF No. 13).

DATED this 8th day of October, 2015.

BY THE COURT:

/s/
James K. Bredar
United States District Judge